**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMERICAN TISSUE, INC., et al., | : | |
| | : | Case No. 01-10370(KG) |
| Debtors. | : | |
| CHRISTINE C. SHUBERT, Chapter 7 | : | |
| Trustee for the Estates of | : | |
| AMERICAN TISSUE, INC., et al., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 06-50929(KG) |
| | : | |
| PREMIER PAPER PRODUCTS, LLC, | : | |
| WIPES INDUSTRIES, LLC, | : | |
| KOSTER INDUSTRIES, INC., and | : | |
| DOES 3 through 20, | : | |
| | : | |
| Defendants. | : | Re: Docket No. 4 |

**MEMORANDUM OPINION**

**Summary of the Case**

The matter before the Court is the Chapter 7 Trustee's Motion for Temporary

Restraining Order Without Notice and Ex Parte Application for Extention of Temporary

Restraining Order and Order to Show Cause Why Temporary Restraining Order Should Not

be Converted to a Preliminary Injunction ("the TRO Motion") D.I. 4 whereby the Trustee

seeks to enjoin the sale of machinery and equipment at an auction scheduled for December

6, 2006 ("the Auction"). On November 22, 2006, the Court granted the TRO Motion for the

issuance of a temporary restraining order ("TRO"). D.I. 6. The TRO temporarily restrained

defendants from selling or otherwise disposing of machinery and equipment pending a

hearing on whether a preliminary injunction should issue.

The Court held a hearing on December 1, 2006, to determine whether to issue a preliminary injunction. The record consisted of declarations, deposition testimony and the live testimony of a witness.

The application for the preliminary injunction arises in an adversary proceeding in which the Trustee has filed an Amended Complaint for Turnover of Estate Property, Imposition of a Constructive Trust and Replevin ("the Complaint"). D.I. 3. The Trustee is seeking the return of equipment and machinery which the Trustee alleges was owned by American Tissue Corporation ("ATC") and maintained at its site in Mexico, and wrongfully taken by defendants and included among the items for sale at the Auction. For reasons explained within, the Court will grant the motion for a preliminary injunction on a limited basis.

## Jurisdiction

The Court has jurisdiction over the adversary proceeding pursuant to *11 U.S.C. §§ 105* and *542*, and *28 U.S.C. §§ 157(a)* and *(b)* and *1334.* Venue is proper because the adversary proceeding arises out of the jointly administered bankruptcy cases pending before the Court, *In re American Tissue, Inc., et al.*, *Case No. 01-10370(KG)***.** Further, this adversary proceeding is a core proceeding and therefore the Court has authority to hear and determine all matters pursuant to *28 U.S.C. § 157 (b)(2)(A), (E) and (F).*

## Statement of Relevant Facts

The facts giving rise to the pending adversary action are complicated and, with minimal discovery taken at this early stage of the litigation, not fully developed. With the time

2

constraints necessarily imposed upon the Court in the setting of an emergency application the Court will not be able to fully recite all of the facts but instead will summarize the facts it believes are most relevant. The support for these factual findings comes from the record which the parties submitted, namely, declarations, documents and the live testimony of the principal of two of the defendants.

1.    On April 26, 2004, the Office of the United States Trustee appointed the plaintiff to serve as the Chapter 7 Trustee ("the Trustee") for the estate of American Tissue, Inc.("ATC"), and other debtor entities ("the Debtors"), pursuant to *11 U.S.C. § 701*, D.I. 3447. The Trustee, as such, has standing to bring claims on behalf of the Debtors' estates.

2.    In the Complaint, the Trustee named as defendants Premier Paper Products, LLC, a Delaware limited liability company ("Premier"), Wipes Industries, LLC, a Delaware limited liability company ("Wipes") and Koster Industries, Inc., a New York corporation ("Koster").

3.    Premier and Wipes are in the business of buying and selling machinery and equipment and are in possession of the machinery and equipment identified in the Complaint and which the Trustee claims belong to Debtors' estates. The Premier and Wipes limited liability companies are owned and controlled by Mr. John Gabayzadeh. Mr. Gabayzadeh is the son of Mehdi Gabayzadeh, the former Chief Executive Officer of ATC who was indicted and convicted of fraud for activities at ATC.

4.    Koster is a New York based auctioneer which specializes in the disposition of industrial machinery and equipment. It contracted with Wipes to conduct a commission sale of machinery and equipment designated by Wipes. The Koster - Wipes agreement provides that

Koster is to receive commissions of a 13% buyer's premium and 5% seller's commission. In addition, Koster and Global Equipment and Machinery Sales, Inc. ("Global"), a non-party entity, were to advance the costs related to the Auction. Thus far, Koster and Global have advanced more than $300,000 in costs and have other obligations to advance up to $62,000. These advanced costs are to be reimbursed from the Auction proceeds.

5.      On or about April 1, 1995, ATC entered into an equipment lease with American Tissue de Mexico, S.A. de C.V. ("AT Mexico"), whereby ATC agreed to lease property and equipment ("the ATC Property") to AT Mexico, and the leased property was to remain at AT Mexico's facilities in Mexicali, Mexico. The lease, as later modified, established that the ATC Property was to remain the sole and exclusive property of ATC. AT Mexico issued a memorandum to ATC on December 18, 2000, listing the ATC Property located at AT Mexico's facility in Mexicali, Mexico. The memorandum and list of the ATC Property are attached to the Complaint as Exhibit C.

6.      On September 10, 2001, ATC and related entities filed in this Court petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code, *11 U.S.C. §§ 1101-74.* The Court entered an Order on April 23, 2004, converting the Debtors' cases from Chapter 11 to Chapter 7 under the Bankruptcy Code. D.I. 3449.

7.      Prior to the conversion to Chapter 7, ATC brought suit against AT Mexico in the United States District Court for the Eastern District of New York ("the New York Action") for replevin, breach of lease agreement, to prevent unjust enrichment, and for conversion and negligence. On March 29, 2006, ATC obtained entry of a default judgment against AT Mexico

4

in the New York Action in the sum of $10,445,346.35. AT Mexico has not satisfied any portion of the default judgment.

8.    In preparing for the preliminary injunction hearing, the Trustee and the defendants, with the assistance of the Trustee's expert, inspected the equipment and machinery which is listed for sale at the Auction ("the Auction Items") and they categorized the Auction Items into four categories which the parties refer to as "buckets." The inventory of the Auction Items with the "bucket" annotations was introduced at the hearing as Plaintiff's Exhibit 3 and because of its helpfulness and significance to the Court's ruling, a copy is attached as an exhibit to the Order giving effect to this Opinion.

A.    Bucket 1 consists of Auction Items that are not the subject of the Complaint, i.e., are not included in Exhibit C to the Complaint, and the Trustee is not contesting their sale at the Auction.

B.    Bucket 2A contains one item which, unlike the equipment in Bucket 2B, has a serial number. The Trustee seeks a preliminary injunction against the sale of this bucket item. However, at the preliminary injunction hearing, the Trustee conceded that the Bucket 2A item may be sold at the Auction provided that the proceeds of the sale are escrowed.

C.    Bucket 2B contains seven pieces of equipment and, as noted previously, these items do not bear a serial number. Again, the Trustee is willing to allow these seven items to be sold at the Auction if the sale proceeds are escrowed. Premier and Wipes contend they have good title to these items and contest the imposition of any conditions on their sale.

D.    Bucket 3 includes equipment and machinery which Premier and Wipes recently moved from a warehouse in El Centro, California, which are clearly the subject of the Complaint and title to which is uncertain. The Trustee and Wipes and Premier are in agreement that these items may be auctioned, provided that minimum reserve selling prices are set with the Trustee's approval and the sale proceeds are placed into escrow.

### Discussion and Ruling

The Court previously entered the TRO on the Trustee's *ex parte* application and the Court must now determine whether to convert the TRO to a preliminary injunction. The issuance of a preliminary injunction is an extraordinary remedy and the standards for issuance are well settled under Third Circuit law.

The Third Circuit requires this Court to apply four factors in determining whether to grant the drastic remedy of a preliminary injunction. They are: (1) the reasonable likelihood that the movant, here the Trustee, will prevail on the merits at the final hearing; (2) the extent that irreparable harm will result without injunctive relief; (3) the balancing of the harm the defendants will suffer if the Court issues the preliminary injunction; and (4) the public interest. *See, e.g., Kos Pharms., Inc. V. Andrx Corp., 369 F. 3d 700 (3d Cir. 2004), In re CareMatrix Corp., 306 B.R. 478 (Bankr. D. Del. 2004).* The duty of the Court is to preserve the relative positions of the parties pending a trial on the merits. *Univ. Of Tex. V. Camensich, 451 U.S. 390, 395 (1981).* In the bankruptcy setting, the Court should be especially sensitive to situations which could result in the dissipation of estate assets, *In re Focus Media Inc., 387 F.3d 1077 (9th Cir. 2004);* and the Court's responsibility to prevent a wrongful taking of the bankrupt's assets provides it with a broader equitable power. *Grupo Mexicano Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 331 (1999); and In re Owens Corning, 419 F.3d 195, 208-209 fn. 14 (3d Cir. 2005) ("had the company in Grupo Mexicano been in bankruptcy, the bankruptcy court would have had the authority to implement the remedy the district court lacked authority to under general equity power outside the bankruptcy context.").*

6

The Court now turns to the application of the facts to the standards for determining the issuance of a preliminary injunction.  The concessions by the Trustee and agreements with respect to the treatment of the "buckets" of the Machinery have reduced the contested motion for injunctive relief to the items in  Bucket 2A and 2B, since the Trustee has agreed to the sale of Bucket 1 items without limitation or condition, and the parties have agreed to conditions which will permit the sale of Bucket 3 items.  Therefore, the remaining discussion is limited to Buckets 2A and 2B.

1.    <u>Likelihood of Success</u>.  The burden is on the Trustee to establish a reasonable likelihood of success on the merits.  Decision on the item in Bucket 2A is not difficult.  This item has a serial number which matches the serial number of an item previously sold by Debtors on notice  pursuant to an Order of this Court.  On July 10, 2002, the Court signed an Order Establishing Procedures for the Sale Free and Clear of Liens and Encumbrances or Abandonment of Certain Machinery and Equipment. D.I. 1341.  Pursuant to the Order, Debtors noticed the sale of the machine which in fact is the Bucket 2A item.  There is no evidence that the sale was not at arm's length.  The reasonable likelihood that the Trustee will be able to prove that the sale was improper and that ATC retained title is small and the Trustee presented no facts which give the Court pause in permitting the sale of the 2A item at the Auction without conditions.

The items in Bucket 2B require a different analysis and result.  The record amply shows that ATC was the owner of the 2B items and leased those items to AT Mexico which defaulted on its obligations.  On the present record and given the minimal opportunity the Trustee has had

7

to take discovery in this expedited proceeding, the Court is satisfied that there is a reasonable likelihood that the Trustee will prevail in establishing that title never passed from ATC and therefore no other entity can now hold title. The Trustee has established that irregularities in the disposition of ATC machinery and equipment abound. Testimony at the hearing established that Wipes and Premier's business operations and relationships are suspect. Therefore, regarding the Bucket 2B items, the Trustee has satisfied the first prerequisite for a preliminary injunction to issue.

2.    <u>Irreparable Harm</u>.  At the hearing, the Trustee established conclusively that Premier and Wipes would not have the financial capacity to satisfy a money judgment, and if the Bucket 2B items are sold and Premier and Wipes use the sale proceeds to pay the Auction costs and to satisfy their creditors as represented at the hearing, little if any money will remain to pay the Trustee for the estate's losses arising from a wrongful taking and sale of Debtors' machinery and equipment.  It is clear that in the absence of injunctive relief, the Trustee's success at trial would be an empty one and the Debtors' estate will therefore be irreparably harmed if the assets are sold without imposing safeguards .

3.    <u>Harm to Defendants from the Issuance of the Injunction</u>.  The Court is also required to determine whether and what harm Premier and Wipes might suffer from a preliminary injunction.  The Court finds that they would be harmed if the Auction is outright enjoined.  Specifically, Premier and Wipes have entered into a settlement with their landlord and if the Auction is enjoined that settlement will be disrupted or worse which would expose Wipes and Premier to substantial financial risk.  The Court will therefore permit the sale of

8

Bucket 2B items to proceed but will fashion a remedy which protects all of the parties.

Furthermore, if the Auction does not proceed, Koster as auctioneer will remain at risk, having advanced over $300,000 which Koster may be at risk in collecting. Koster is also entitled to payment of its commissions to prevent unjust enrichment to either Premier, Wipes or Debtors. Here again, the Court's contemplated remedy will eliminate harm to Koster which is necessary and appropriate because the Trustee did not produce any evidence of any wrongdoing whatsoever by Koster.

4. <u>Public Interest</u>. The public interest is served when the Court imposes relief which maintains integrity in financial and business dealings and protects bankrupt estates from misappropriation of assets. Here, granting relief to the Trustee while eliminating or reducing harm to the defendants satisfies the final requirement for the issuance of a preliminary injunction.

## <u>Remedy</u>

The Auction will proceed on December 6, 2006, as scheduled, on the following terms and conditions:

A.   Bucket 1 items may be sold and the proceeds paid to Wipes and Premier, subject to payment to Koster of costs and commissions on the terms of the agreement with Koster.

B.   Bucket 3 items may be sold subject to the Trustee's right to establish price minimums and the proceeds will be escrowed pending trial and the Court's ruling.

C.   Bucket 2A item may be sold and the proceeds, net of paying Koster, will be paid to Wipes and Premier.

D.      Bucket 2B items may be sold and the proceeds will be paid into escrow.

If the funds paid to Wipes and Premier from the sale of Bucket 1 and 2A are insufficient to pay Koster, Wipes' landlord under the settlement agreement or to permit the sale of equipment and machinery free and clear of liens, Koster, Premier and/or Wipes may apply on notice to the Court for relief on an expedited schedule.

An appropriate Order giving effect to the Court's ruling will issue with this opinion.


                              BY THE COURT:


Dated: December 4, 2006            KEVIN GROSS
        Wilmington, DE             UNITED STATES BANKRUPTCY JUDGE