# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN TISSUE, INC., et al., : | |
| : | Case No. 01-10370(KG) |
| Debtors. : | |
| CHRISTINE C. SHUBERT, Chapter 7 : | |
| Trustee for the Estates of : | |
| AMERICAN TISSUE, INC., et al., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Adv. Proc. No. 06-50929(KG) |
| : | |
| PREMIER PAPER PRODUCTS, LLC, : | |
| WIPES INDUSTRIES, LLC, : | |
| KOSTER INDUSTRIES, INC., and : | |
| DOES 3 through 20, : | |
| : | |
| Defendants. : | **Re: Docket Nos. 43 and 51** |

## MEMORANDUM OPINION[1]

Dated: November 20, 2007

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this matter by Federal Rule of Bankruptcy Procedure 9014.

# GLOSSARY

The defined terms utilized in this Opinion are:

| | |
|---|---|
| "ATC" | Debtor American Tissue Corporation |
| "AT Mexico" | American Tissue de Mexico, S.A. de C.V., a Mexican |
| "Code" | Bankruptcy Code, 11 U.S.C. §§ 101, et seq. |
| "Debtors" | American Tissue, Inc., and the other debtor entities |
| "Defendants" | Premier and Wipes, collectively |
| "Ellick Affidavit" | Affidavit of Ross J. Ellick, dated April 20, 2007. |
| "Employees" | Employees of AT Mexico |
| "Equipment" | Equipment ATC leased to AT Mexico. |
| "Gabayzadeh" | Gabayzadeh family, which owned and operated the |
| "Gabayzadeh Affidavit" | Affidavit of John Gabayzadeh, dated April 20, 2007. |
| "Gabayzadeh Transcript" | Transcript of the deposition of John Gabayzadeh, taken on August 19, 2004 |
| "Hearing Transcript" | Transcript of the hearing held on December 1, 2006, on the Trustee's motion for a preliminary injunction |
| "Lease" | Equipment lease, dated April 1, 1995, between ATC and AT Mexico |
| "Yee Affidavit" | Affidavit of Ruben Antonio Sanchez Aldana Yee, dated April 19, 2007 |
| "Lease Modification" | Lease modification agreement, dated September 1996, modifying the Lease |
| "Mexicali Property" | AT Mexico's facilities located at Mexicali, Mexico |
| "Premier" | Defendant Premier Paper Company |
| "Roozrokh Memorandum" | Memorandum dated December 18, 2000, from Shahram Roozrokh, an AT Mexico Employee, to Ed Stein and Mehdi Gabayzadeh |
| "Shubert Declaration" | Declaration of Christine C. Shubert, Trustee, dated March 22, 2007 |
| "Trustee" | Christine C. Shubert, Chapter 7 Trustee and the plaintiff in this adversary proceeding |
| "Wipes" | Defendant Wipes Industries, LLC. |

**INTRODUCTION**

Pending before the Court on cross-motions for summary judgment is the issue of ownership of the Equipment as between the Trustee and the Defendants. The Court's decision is based upon the record, including the materials submitted on a temporary restraining order application, the summary judgment briefs, oral argument and the following evidence: Shubert Declaration, and exhibits; Ellick Affidavit, and exhibits; Gabayzadeh Affidavit, and exhibits; Yee Affidavit, and exhibits. The dispute between the Trustee and Defendants has the added context that the creditors of ATC were defrauded by management which included Gabayzadeh. For the reasons stated herein, the Court will grant summary judgment to the Trustee and deny Defendants' cross-motion for summary judgment.

**FACTS**

Debtors were in the paper manufacturing, processing and converting businesses, and filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 10, 2001. Thereafter, although Debtors filed a plan of reorganization, the case was ultimately converted to a Chapter 7 liquidation with Christine Shubert serving as Trustee.

The Trustee commenced this adversary proceeding on November 21, 2006. Early in the adversary proceeding, the Court entered an Order Granting Chapter 7 Trustee's Amended Ex Parte Application for Issuance of a Temporary Restraining Order Without Notice (D.I. 6), barring the sale of the Equipment. Thereafter, following a hearing and numerous telephone conferences and the parties' negotiations, the Court entered an Order and several amended Orders converting the TRO to a preliminary injunction, in part, protecting the Equipment or the proceeds from any sale of the Equipment pending trial.

The operative, material facts are, on analysis, largely undisputed. The decision rests

.

upon the parties' contentions over the legal issues.

On April 1, 1995, ATC entered into the Lease with AT Mexico to lease the Equipment that would later be used to manufacture and process paper. Shubert Declaration, ¶ 4, Exhibit A. Both ATC and AT Mexico were controlled by the Gabayzadeh family and, in particular, Mehdi Gabayzadeh.[2] Mehdi Gabayzadeh was later convicted of federal charges for defrauding the Debtors' creditors.[3] *United States v. Gabayzadeh*, CR-03-162 (E.D.N.Y.) Shubert Declaration, Exhibit I. In September 1996, both parties executed the Lease Modification which modified the list of the Equipment leased to AT Mexico and prohibited the removal of any ATC property from the Mexicali Property. Shubert Declaration, ¶ 5, Exhibit B. On August 20, 2002, AT Mexico transferred the Equipment to the Employees in full satisfaction of pending legal claims for back wages and other monies owed. Shubert Declaration, ¶ 8, Exhibit E. On January 11, 2006 the Employees sold the Equipment to Unicare, an entity owned by Wipes. Gabayzadeh Transcript, page 35.

Wipes is owned and operated by John Gabayzadeh, Mehdi Gabayzadeh's son. Hearing Transcript, pages 17-38. Neither Wipes nor Unicare have any meaningful assets. Hearing Transcript, pages 35-36. Defendants thereafter removed the Equipment from the Mexicali Property to El Centro, California, and ultimately moved the Equipment to Coxsackie, New York, incurring more than $130,000 in transportation expenses. Gabayzadeh Affidavit, ¶ 3. Defendants paid $212,500 toward the purchase price of the

---

[2] *See Affidavit of Mehdi Gabayzadeh in Support of First Day Motions, dated September 10, 2001, ¶ 1 (D.I. 2).* In addition, AT Mexico is jointly owned by Gabayzadeh and another family which is also Wipes' largest creditor. Gabayzadeh Tr. at 39, 93.

[3] Mehdi Gabayzadeh was sentenced to 15 years of imprisonment and ordered to pay $64 million in restitution to Debtors' creditors.

equipment and still owe $112,500. Gabayzadeh Affidavit, ¶ 11.

Pursuant to the Lease and Lease Modification, it was expressly understood that when ATC leased the Equipment to AT Mexico, the Equipment remained the property of ATC. As late as December 18, 2000, an employee of ATC issued a memorandum confirming that the Equipment remained "in existence at the Mexicali Plant at this time." The Roozrokh Memorandum. Shubert Declaration, Exhibit C.

Therefore, as of December 18, 2000, we know that the Equipment was owned by ATC and in use at the Mexicali Plant pursuant to the Lease. It was then that the unexplained happened. AT Mexico settled an arbitration award against it for $589,567.25, in unpaid wages by transferring the Equipment in August, 2002, to the AT Mexico Employees, who accepted the Equipment in full satisfaction of their claim. Gabayzadeh Affidavit, ¶ 5. Defendants have not provided a scintilla of evidence that AT Mexico ever acquired title to the Equipment. Thus, while the bankruptcy case was pending, AT Mexico, whose only rights in the Equipment were lease rights, transferred Debtors' property, the Equipment, to the Employees.

After her appointment, the Trustee became concerned that AT Mexico was not honoring the Lease and retained lawyers to protect the Estate's rights. On April 18, 2003, one of ATC's lawyers wrote a letter to AT Mexico demanding that AT Mexico provide:

> (1) Documentary proof that each piece of Equipment identified on Exhibit "A" hereto remains at ATMexico's facilities located at Calle Villa-hermosa, Baja California, Mexico.
>
> (2) Certification by ATMexico that none of its officers/directors/shareholders have taken any actions or steps to encumber the integrity of ATC's ownership of

        the Equipment, and certification that ATC remains the exclusive owner of each piece compromising the Equipment.

(3)     Certification by ATMexico that none of the Equipment has been moved from ATMexico's facilities located at Calle Villa-hermosa, Baja California, Mexico.

(4)     Documentary proof (including insurance policies and declarations) that ATMexico continues to insure the Equipment against all risks (including fire, theft, earthquake, and all other perils) and that ATC is currently named as an additional named insured under ATMexico's general liability and property insurance policies.

(5)     Documentary proof that ATMexico has paid any and all expenses incurred with respect to the operation of the Equipment including but not limited to taxes, license fees and other governmental charges.

(6)     Documentary proof that each piece of the Equipment remains in good working and operating condition.

(7)     Certification that designated representatives of ATC may inspect each piece of the Equipment at ATMexico's facilities located at Calle Villa-hermosa, Baja California, Mexico on or before April 30, 2003.

Shubert Declaration, Exhibit D.

AT Mexico did not provide the requested certifications or documents to ATC. *Id.* In January 2006, the Employees sold the Equipment to Unicare for $325,000. Defendants thereafter moved the Equipment from Mexicali to California and, thereafter to New York, Georgia and elsewhere.

In the Amended Complaint, the Trustee seeks turnover pursuant to Code Section 542, the imposition of a constructive trust, and/or replevin, all concerning the Equipment.

**COURT'S JURISDICTION**

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

**LEGAL STANDARD**

The Court is addressing cross motions for summary judgment. Summary judgment is proper if there is no genuine issue of material fact, and when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Pearson v. Component Tech Corp.*, 247 F.3d 471, 482 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); see also Fed. R. Civ. P. 56(c).

In all cases, the court should draw all reasonable inferences from the underlying facts most favorably to the nonmoving party. Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224 (3d Cir. 1993).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific

acts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable trier of fact could return a verdict for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 512 (3d Cir. 1994).

## DISCUSSION

The central, unrefuted fact which is dispositive of the dispute under advisement is this: ATC owned the Equipment on the day the bankruptcy cases began and never sold it. Defendants rely upon Gabayzadeh controlled AT Mexico's completely self-serving statement in its agreement of sale to the Employees that "it is delivering machinery and equipment [i.e., the Equipment"] owned by [AT Mexico]". The statement is a falsehood. Defendants have presented no evidence to rebut the Trustee's evidence that ATC owned and never relinquished ownership of the Equipment.[4] In the Gabayzadeh Affidavit and the Yee Affidavit, noticeably absent is any statement that AT Mexico ever held title to the Equipment – and both affiants are or were knowlegeable of the transaction whereby Unicare took possession of the Equipment. Defendants presented no evidence, even after the Court gave

---

[4] The Roozrokh Memorandum, the Demand Letter, the Shubert Affidavit and the record of these bankruptcy cases are persuasive evidence proving the Trustee's case.

them additional time to do so, that AT Mexico ever responded to the Demand Letter, let alone denied the accuracy of Debtors' claim of ownership. Defendants, under the control of a member of Gabayzadeh which, in turn, controlled Debtors and AT Mexico, also never presented evidence that Debtors ever lawfully transferred the Equipment to AT Mexico. Moreover, a sale of the Equipment to AT Mexico by Debtors in the course of these bankruptcy proceedings would require the Court's approval of a motion pursuant to Code Section 363, for sale, on notice, an auction, a hearing and an Order of the Court. Debtors sought no authority for, or approval of, a sale even while controlled by Mehdi Gabayzadeh and, of course, the Court never gave any such authority or approval.

With no credible facts to support a claim that ATC ever transferred ownership of the Equipment, Defendants make a series of legal arguments to defeat the Trustee's effort to retake possession of the Estate's property. For the sake of judicial economy, the Court will address the substantive legal arguments but, as will be explained, they are invalid on procedural grounds.

### **Affirmative Defenses**

Defendants argue that the Trustee's turnover and replevin claims are barred by the statutes of limitations under Code Section 549(d) and state law respectively, as well as the equitable doctrine of laches. The Defendants also claim they are good faith transferees under Code Section 550(b). Defendants lastly claim that the Trustee's constructive trust claim fails to state a claim upon which relief can be granted.

Defendants' arguments that they are entitled to judgment because of the application of the statute of limitations, laches and that the Trustee failed to state a claim for relief are

affirmative defenses to the Trustee's claims. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985) (the statute of limitations is an affirmative defense); *Cook v. Wikler*, 320 F.3d 431, 438 (3d Cir. 2003) (laches is an affirmative defense); *Greiff v. T.I.C. Enters., L.L.C.*, 2004 U.S. Dist. LEXIS 680, *6 (D. Del. 2004) (failure to state a claim is an affirmative defense.) The Defendants were required to raise affirmative defenses in their answer to the First Amended Complaint. Federal Rule of Civil Procedure 8(c). Defendants did not do so. The principal affirmative defenses Defendants raised in their Answer, both of which are factually wrong, were that they purchased some of the Equipment through transactions approved by the Bankruptcy Court and that they purchased some of the Equipment from third parties who had valid title to the Equipment. See Answer (D.I. 33), and Ellick Affidavit, Exhibit A. Defendants did not assert the affirmative defenses upon which they now rely.

The Court holds that the Defendants have waived their right to assert the statute of limitations, laches, and other affirmative defenses advanced for the first time in the Cross-Motion. Although Defendants argue that they can and should be permitted to amend their Answer, Defendants have never moved to amend despite the length of time that has passed.

The Court's ruling is sufficient to grant summary judgment on procedural grounds to the Trustee. Nonetheless, given the harm the Trustee and the Estate have suffered, the Defendants' tenacity in boldly attempting to retain ill-gotten property and for the sake of judicial economy, the Court will address the substantive legal arguments. To be clear, the Court's decision on the merits is premised on two discrete but complimentary holdings. First, Defendants have no legal or equitable interest in the Equipment because ATC never

8

transferred its ownership. Second, any transfer would be void *ab initio* because of the automatic stay.

## Avoidance v. Turnover Claim

Defendants argue that while the Trustee has labeled its first cause of action a "turnover" claim pursuant to Code Section 542(a), it is in reality an "avoidance" claim pursuant to Code Section 549(a) and, as such, is time barred as having been brought more than two years beyond the transfer.[5] Defendants base their argument largely on the holding in *In re 31-33 Corp.*, 100 B.R. 744 (Bankr. E.D. Pa. 1989). In that case involving payment of fees to professionals who were acting without court approval, the court found that because the transfer was post-petition, the remedy was avoidance, not turnover. The court ruled that:

> The narrow basis on which the Realtor invokes a viable defense to the instant motion requires us to conclude that § 549 is the exclusive vehicle by which the Trustee may recover the compensation paid to the Realtor in a post-petition transaction. After further study of the pertinent authorities, we agree with the Realtor that this conclusion is correct. We believe that § 542(a), which the Trustee attempts to invoke, is properly interpreted as being confined to actions against the parties "holding property of the estate on the date of the filing of the petition" (emphasis added), S. REP. NO. 95-989, 95th Cong., 95-595, 95th Cong., 1st Sess. 369 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5870, 6325, i.e., property held by or turned over to the transferee pre-petition. By way of contrast, § 549 appears to be the sole provision addressing avoiding powers of the trustee to avoid or set aside post-petition transfers.

*In re 31-33 Corp.*, 100 B.R. at 747.

Defendants' argument misses the mark. There was no transfer because the so-called transfer of the Equipment was void *ab intio* as a violation of the automatic stay. ATC owned

---

[5] The transfer took place on August 20, 2002, more than two years before the Trustee filed the action on November 21, 2006.

9

the Equipment on the Petition Date. The Equipment thus became "property of the estate" under 11 U.S.C. § 541. AT Mexico held only a leasehold interest in the Equipment. It could not have "transferred" ownership of the Equipment to any other party because it was not the owner.

The Equipment is property of the Debtors' estate. The Trustee therefore has the power under Code Section 542 to require "any entity. . .in possession, custody, or control, *during the case*, of property that the trustee may use, sell, or lease. . .to deliver to the trustee . . . such property or the value of such property. . .." 11 U.S.C. § 542(a), emphasis added). Turnover of the Equipment is the proper remedy. Acts in violation of the automatic stay are a nullity. *See Raymark Ind. v. Lai*, 973 F.2d 1125, 1132 (3d Cir. 1992) (a state court judgment entered in violation of the automatic stay is void *ab initio*, "a complete nullity and without legal effect," and that vacating such a judgment is "merely a formality"); and *Richard v. City of Chicago*, 80 B.R. 451, 454 (N.D. Ill. 1987) ("Section 549 applies only to transfers of property and, because we have determined that the tax sale was void and no property was transferred, this section is inapplicable.").

Upon commencement of a bankruptcy case, an estate is created which is to be administered by the debtor-in-possession or trustee, as the case may be, for the benefit of the estate's creditors. See 11 U.S.C. § 541(a). The estate representative holds all property rights in the estate. Where, as here, the transferor had no legal authority to transfer the property of the estate, the transaction had no legal effect. AT Mexico never had any ownership rights which it could transfer and, accordingly, there is no "transfer" to be avoided under section 549.

Code Section 549 applies to post-petition transfers by debtors or creditors who seize debtors' property to perfect liens. *In re PSA, Inc.*, 335 B.R. 580, 584 (Bankr. D. Del. 2005); *see also In re Schwartz*, 954 F.2d 549, 573-74 (9th Cir. 1992), in which the Ninth Circuit stated that:

> Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property.

The primary case Defendants cite for the proposition that Debtors' are pursuing a Code Section 549 avoidance claim subject to the two-year statute of limitations is *In re 31-33 Corp.*, *supra*. The problem for defendants is that *31-33 Corp.* involved debtor's post-petition transfers to its professionals for work performed in the sale of assets. The court stated:

> Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. . .. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property.

The cases uniformly establish that Code Section 549 is not the controlling Code section, and therefore the two-year statute of limitations does not control.[6]

### **Any Transfer is Void**

The purported transfer of the Equipment is void *ab initio* as a violation of the automatic stay. *In re Siciliano*, 13 F.3d 748 (3d Cir. 1994); *In re Ward*, 837 F.2d 124 (3d

---

[6] The Court's rulings that Defendants waived affirmative defenses and that the two-year statute of limitation does not apply obviates the need to address whether equitable tolling of the limitation period applies. There is, however, an abundance of evidence establishing that neither ATC nor the Trustee had any reason to believe there had been a transfer of the Equipment and made diligent efforts to confirm the status of the Equipment. The Trustee's efforts were met by evasiveness, invocation of the privilege against self-incrimination and misinformation. For the same reasons, as well as Defendants' "unclean hands," laches is not a valid defense.

11

Cir. 1988); 11 U.S.C. § 362(a); see also *In re Hull*, 2003 Bankr. LEXIS 965 (Bankr. D. Del. 2003) (holding that any act to exercise control over property of the estate in violation of the automatic stay is void and citing with approval the Ninth Circuit opinions *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076 (9th Cir. 2003) ("*Lusardi*") and *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992) ("*Schwartz*")).

Defendants make two arguments to counter the Trustee's points that the transfer of the Equipment was void *ab initio* and that Code Section 549 is not the operative Code provision. The Defendants' dispute with the Trustee's void *ab initio* position is exasperating. Defendants rely upon *In re Siciliano*, 13 F.3d 748 (3d Cir. 1994) to argue that the violation of the automatic stay does not render a transaction void but merely voidable. Defendants use, or more accurately misuse, *Siciliano* to support their indefensible position.

In *Siciliano*, the Third Circuit reversed the bankruptcy court's ruling (and district court's affirmance) dismissing a mortgagee's motion for relief from the automatic stay. The mortgagee was unaware of a bankruptcy filing and had foreclosed on a debtor's property. The mortgagee thereafter sought to annul the stay. The Third Circuit held that it is the "general principle that any creditor action taken in violation of an automatic stay is void *ab initio*, see *Maritime Electric Co. v. United Jersey Bank.*, 959 F.2d 1194, 1206 (3d Cir. 1991)," but found that the case before it fell within an exception to the overriding rule on the basis of facts specific to the case. *Siciliano*, 13 F.3d at 750.

Here, there is no reason to depart from the general rule that transfers which violate the automatic stay are void. The Gabayzadehs not only knew that Debtors were in bankruptcy, they were instrumental in the bankruptcy proceedings.

Defendants also disagree with the principle that Code Section 549 applies only to post-petition transfers by debtors and complain that the Trustee cites no case and Defendants are unaware of any such holding. There are no cases with such a holding because if a transfer involves *property of the estate*, only a debtor can make the transfer.

### Turnover Claim

The Trustee seeks the turnover of the Equipment pursuant to Code Section 542(a). The required statutory elements are:

1. The property is in the possession, custody or control of another entity.

2. The property can be used in accordance with Code Section 363.

3. The property has more than an inconsequential value to the debtor's estate.

The Trustee readily satisfies each of the foregoing requirements. Defendants are in possession of the Equipment, or at least pieces of the Equipment, and the Equipment is of great value. Defendants do not dispute the first and third elements. The Equipment can be used in accordance with Code Section 363.

Defendants dispute the third element, that the Equipment can be used in accordance with Code Section 363. This is a specious argument. Debtors owned the Equipment on the petition date and there is no evidence that Debtors ever transferred the Equipment. Code Section 363 authorizes a trustee to "use, sell or lease. . . property of the estate" outside the ordinary course with court approval. Code Section 541(a), in turn, defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case. Debtors were clearly able to use the Equipment and did so. Debtors could not sell the Equipment without the Court's approval.

13

Defendants audacity continues with their argument that as purchasers of the Equipment, they are entitled to the good faith transferee defense under Code Section 550(b). The defense is neither legally nor factually applicable - - it isn't a close question.

Code Section 550 provides in pertinent part, that (emphasis added):

> **§ 550. Liability of transferee of avoided transfer.**
>
> (a) Except as otherwise provided in this section, to the extent that a transfer is ***avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title*** . . ., the trustee may recover, for the benefit of the estate, the property transferred, or. . . the value of such property, from- -
>
>     (1)    The initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
>     (2)    any immediate or mediate transferee of such initial transferee.
>
> (b)    The Trustee may not recover under section (a)(2) of this section from- -
>
>     (1)    a transferee that takes for value. . .in good faith, and without knowledge of the ***voidability of the transfer avoided***; or
>
>     (2)    any immediate or mediate good faith transferee of such transferee.

The good faith defense is not applicable to a turnover claim.

Defendants' citation to *Groupe v. Hill (In re Hill)*, 156 B.R. 998 (Bankr. N.D. Ill. 1993) illustrates their misapplication of the law. In *Groupe*, the court found that Code Section 550(b) applied in turnover actions on the ground that even if the relief sought "is styled turnover under section 542, avoidance under section 549 or recovery under section 550, the end result is substantially the same." *Groupe*, 156 B.R. at 1009. *Groupe* is a result driven ruling which is wrong. One need look no further than Code Section 542(c) to

recognize that in a turnover action, the good faith defense protects transferors (i.e., the Employees), not transferees (i.e., Defendants). *See In re Cybridge Corp.*, 304 B.R. 681, 689 (Bankr.D.N.J. 2004) (transferees are not covered by Code Section 542(c), unlike Code Sections 549 and 550 transferees). The legislative history and commentary to Code Section 542(c) also make this point of law irrefutable.[7]

Factually, Defendants have no basis to assert a good faith defense and, if anything, their actions reveal malefaction. John Gabayzadeh, the son of Mehdi Gabayzadeh who went to prison after his conviction for defrauding ATC's creditors, stood on both sides of the unlawful transfers. In his deposition testimony (which he gave as a representative of AT Mexico), John Gabayzadeh testified that he is an owner and agent of AT Mexico. At the same, John Gabayzadeh testified that he is an insider of Defendants and manages and oversees their operations. His father was an insider of Debtor at the time of the wrongdoing for which he was convicted. Any claimed ignorance of or innocence by John Gabayzadeh for the facts relating to the transfer of the Equipment is utter nonsense. See *In re Bressman*, 327 F.3d 229 (3d Cir. 2003), in which the Third Circuit adopted as the standard for good faith that the defense is not available if the transferee has knowledge of facts that would lead a reasonable person to believe that the property was recoverable by a debtor. That is the case here.

---

[7] The Congressional Record Statements (Reform Act of 1978), to Code Section 542(c) provides, in part:
> Protection afforded by Section 542(c) applies only to transferor or payor and not to a transferee or payee receiving a transfer or payment, as the case may be. Such transfer is treated under section 549 and section 550 of title 11.

15

**CONCLUSION**

The Court's findings and holdings require it to grant summary judgment to the Trustee and to deny summary judgment to Defendants. Accordingly, Defendants are ordered to turnover the Equipment to the Trustee and the proceeds from the sale of any of the Equipment being held in escrow pursuant to the Amended Order, entered December 5, 2006, are directed to be released to the Trustee.

The Trustee is requested to submit a form of Order, on notice, conforming with the Court's decision. Defendants will have five business days to file an objection, if any, to the form of Order.

_____
KEVIN GROSS, U.S.B.J.